Good afternoon, everybody. We're here today for oral argument in Appeal 22-2210, Megan Daniels v. United Healthcare Services. We're going to begin with oral argument for the appellant from Mr. Lauffenburg. Thank you, Your Honor, and may it please the court, counsel. My name is Lynn Lauffenburg, and I represent the appellants, Chris and Betsy Daniels, and their daughter, Megan. The Daniels filed this lawsuit, as you know, from the briefing in 2019 in the Circuit Court for Dane County, alleging that there had been a breach of the benefit plan under which Chris and Betsy were beneficiaries issued by the School District of South Milwaukee for mental health benefits for which they had applied for their daughter, Megan. They sued United Healthcare. As alleged in the complaint, they believe that United Healthcare had issued an insurance policy for the benefit of the School District and for its employees. Mr. Lauffenburg, I'm right here. Yes. Just a factual matter for you. When the Daniels submitted these multiple appeals, okay, trying to get the coverage for their daughter that they were seeking, and they kept getting back these letters from United Healthcare, and I note your argument about the stamp on the letter, and it says United Healthcare, and so forth and so on. Did the School District ever chime in? Not according to the allegations of the complaint and not to my knowledge. All of the communications that the Daniels had in the appeal of their claim for benefits was with United Healthcare. United Healthcare apparently had a contract. The motion to dismiss in this case foreclosed any discovery into the details of the contractual relationship between the School District and United Healthcare, but it's clear from the plan document, which is part of the appendix in this case, that the School District had delegated to United Healthcare full responsibility for determining the eligibility for benefits under the plan. Mr. Lauffenburg, if we concentrate in on that, the decision making that occurs. Yes. I'm not sure how we pronounce it, Lukey or Leakey case from 1984? I think that's how it's pronounced. Lewek? Lewek. Lewek. Thank you, Judge. If that case had not been reversed and vacated, it strikes me the plaintiffs would have a stronger argument here, but we've got decades of Wisconsin bad faith law that happened after the Supreme Court reversal that either don't mention the case or certainly don't adopt this reasoning that it's the decision making that is the font of the potential liability. Well, as you know, Judge, this is a diversity action and the court's responsibility is to determine how the Wisconsin Supreme Court would rule on this issue. And whether Lewek's, the statement of the Supreme Court in Leake is viewed as dicta or as authoritative statement of Wisconsin law, which was nonetheless adopted by the court, but never overruled, never reversed. I understand it was never mentioned again, but our position as set forth in our briefing is that the cases that follow from Leake are very consistent with the proposition that it is not only the entity which has the responsibility for paying benefits on an employee type benefit plan, but also the entity which is charged with, and in this case, was delegated the responsibility for paying benefits. We've pointed the court to the Al Saxon case, which is the most recent pronouncement of the Wisconsin Supreme Court on that issue, in which the court rejected a contention by the third party administrator of the Wisconsin Uninsured Employers Fund that it could not be held liable under the common law of Wisconsin for bad faith because it had no direct relationship to the Wisconsin Supreme Court. It was not an insurer and did not have a direct relationship with the employee who was claiming benefits under that fund. The argument was made that it would be contrary to public policy to hold the third party administrator responsible under the common law duty of good faith and fair dealing when it had no such relationship and was the fund that was ultimately obligated to pay. In fact, if damages were awarded against the third party administrator, in that case, Gallagher Bassett, that the amount that would be obligated to pay would have to be paid from the fund anyway. The court rejected those arguments and said the public policy of the state of Wisconsin is to protect people like the statutory beneficiary conceitedly in that situation from unfair practices in the administration of claims. The same philosophy underlay the Supreme Court's decision in the McEvoy case where the HMO asserted that it could not be liable for bad faith under, frankly, strikingly similar facts. Apropos of McEvoy, do you know at this point whether UnitedHealth here shares at all in any of the financial risks under the terms of its contract or you just don't have access to that? We don't have access to that. As I said, the 12B6 motion foreclosed discovery. I think that's an interesting question though. If the answer were yes, the logic of McEvoy would seem to carry forward there pretty readily. But I have to ask you a somewhat wistful question, Mr. Lauffenberg, and that is why did you not also sue the school district, in which case this would be in the state courts, there would not be complete diversity, and the Wisconsin courts could answer this question about Wisconsin law? Well, initially, as I said, Daniels reasonably believed that they were dealing with an insurance company that was responsible for not only the administration but the payment of their claims. By the time they determined that it was not an insurer in the classical sense that it was making the payment but simply processing the claims for the school district, the die was cast, the case had been removed to district court. But more importantly, even had they known that, the target in this case is the wrongdoer. I don't think you've answered Judge Hamilton's question. That's what I'm trying to do. Okay. The goal in this case is to hold the party that's responsible for the bad decision-making. Well, the school district, if they delegated it to UnitedHealthcare, they're also accountable for its decisions, right? Theoretically, I think agency law, they would be liable, but the point that I have here is there's no doubt in our mind, and I think discovery will probably bear this out, that had UnitedHealthcare decided to pay these claims, the school district would have paid them. In other words, processed them and said that she was eligible for these benefits. The school district is, in the reality of the current environment, people like the school district have no expertise in the administration of these employee benefit plans. They either purchase a commercial insurance product, as was the case in McEvoy, where the government entity contracted with the HMO to provide these benefits, or they hire a contract with a third-party administrator like UnitedHealthcare, which is in the business of developing these plans for entities like the school district, and administering the plan, making decisions on eligibility for benefits, and it's that party whose decisions are at issue in this case and ought to be held accountable, and that's what the Daniels seek to do. Let me ask you a question, since you raised the issue of agency law. Is there any way to understand this delegation question? There is this delegation clause in the summary plan document, separate and apart from agency law, because it seems to me you may very well be at a dead end with agency law in the insurance context. Is there some other way we're supposed to understand this delegation, this decision-making point that you're making based on the summary plan document, other than the fact that it creates an agent relationship? As the court pointed out in the Leek case, the Supreme Court, which is the most direct pronouncement of the Supreme Court's belief or feelings on this issue of Wisconsin law, the agent has the same fiduciary obligation as the principal in the administration of these claims. But what do we do with the fact that the summary plan document specifically says that UnitedHealthcare is not a fiduciary? Whether you call it a fiduciary or a special relationship, the Wisconsin court, in the context of bad faith law, has looked at the relationships between the parties and determined whether, especially in these employee benefit relationships, like in the McEvoy case, like in the Leek case, like in the L. Saxon case, it's not relevant for purposes of determining whether there's a duty of good faith and fair dealing, whether the entitlement to benefits arises out of a statutory mandated requirement, like workers' comp, whether it arises under a commercial insurance plan, like in McEvoy, HMO plan, albeit, or whether it arises under a self-funded plan. It would make no sense to say that beneficiaries of a self-funded plan like this would be entitled to less protection of the tort law of Wisconsin than the beneficiaries of a school district plan where the school district happened to have purchased a commercial insurance policy. However, we're not the Wisconsin Supreme Court. We're just making an eerie guess. And when this type of font of liability that you're asking us to recognize is not seen in Roll, it's not seen in Bretson, it's not seen in the 38 years since Leek, aren't our hands tied? I don't believe so, Your Honor. I think Leek is consistent. In all the cases that came after Leek, whether they cited Leek or not, consistently there has not been a single occasion when the Supreme Court has been asked to determine whether the beneficiary of an employee benefit plan has a right of action against somebody other than a commercial insurance carrier with no commercial, no contractual relationship between the beneficiary and the entity that's processing the claims. In every single case, the court has come down on the side of the beneficiary and said, yes, Wisconsin tort law provides a remedy for wrongful conduct in the administration of these claims without regard to whether there was a direct contractual relationship between the beneficiary and the party that's charged and has assumed or was delegated the responsibility of administering the claim in a fair manner. Did you want to reserve the remainder of your time? I do. Thank you. Thank you, Mr. Lauffenberg. We'll now hear from Ms. Grant on behalf of the APLE. Thank you. May it please the court, counsel, Michelle Grant on behalf of APLE's UnitedHealthcare and UnitedBehavioralHealth. And I first want to start by answering a couple of questions. As to the question about the financial risk, the summary plan description makes it clear that there is no financial risk on behalf of UnitedHealthcare. This is a self-funded plan, and the sole financial responsibility for payment of claims is the district. Is there any incentive in the compensation structure for UnitedHealthcare? Incentive in the compensation structure? Is that what the question is? Yes. No, there is not under the self-funded plan. I don't believe that's part of the record before this in the complaint, but the benefits, and there's no incentive for denial of benefits or anything like that. That's my question, but I also understand it's outside the record. Okay, go ahead. And as to, I guess, going back to the discussion of leak, I think that is telling. I think that leak in the 37, 38 years since that has been overturned, not a single case has relied or cited on it. Do you agree that the holding that favors the plaintiff's position in this case was not appealed in that case? Was not overturned. Was not even appealed. I'm not sure if I agree with that. Quoting the Supreme Court, finally, the Wisconsin Supreme Court found that AEDNA could be liable to leak for bad faith administration of a disability claim since it was an agent of Alice Chalmers for the purpose of administering claims. It thus reversed the appellate court's judgment and remanded the case for a determination whether AEDNA played any role in the processing of leak's disability claim. AEDNA has not sought review of that part of the judgment. So that part of the Wisconsin Supreme Court's judgment is untouched by the U.S. Supreme Court's review. That specific piece about, like AEDNA. The part that directly is on point and favors plaintiffs, correct? Potentially. I guess I might. What's the potential? Well, so the issue is that the Supreme Court did reverse, and the whole discussion of the reversal was on preemption, so it was a different piece of it. But it was relying on the fact that the underlying issue was with respect to the contract, right? The contract and the tort of bad faith coming out of the contractual relationship with the plaintiff. Right, but that's all because that was an ERISA-governed plan, and this one is not, correct? That's at least probably part of the difference in the distinction. Right, so for plans not covered by ERISA, the leak holding remains untouched. It remains unsighted, but also untouched. But I think that still the reversal really, and I know that it's not clear, and because this part wasn't that specific. What's unclear about it? Well, I think the issue is that the reason for the reversal was based on the clear discussion about the contract that is preempted because of the contractual relationship between the parties. The tort, well, under ERISA, yes, these independent tort remedies won't fly. But the Wisconsin court was clear about what it was deciding as between these parties, between those parties rather, and that would seem to apply directly to a similar plan that's not covered by ERISA. Perhaps, although in two later places, Roll in 2010 and Breckhorst in 2011, again, had the opportunity later to say that leak is still applicable, perhaps. But in both of those cases, the court reaffirmed, and the district court indicated this as well, reaffirmed that they limit the tort of bad faith to where there was a contract to the party. Is there any other example of tort liability, bad faith liability, outside of the contractual context in Wisconsin case law? Not other than the workers' compensation case under Azlaxan, the leak case that we were just talking about. And how about McAvoy? So McAvoy, I disagree with Daniel's discussion and how McAvoy. So in McAvoy, there was a contract. There is a contract between the parties. They argue there's no contract because the minor plaintiff was not a contract to the insurance policy, but that was insurance policy where the minor plaintiff was a beneficiary, the mom was a subscriber. They had a contract with the HMO. So that is more along the lines of Roll and the other cases where there was an actual contract there. But Roll, and correct me if I'm wrong, Roll was about settling claims with third parties, right? Correct. Okay. And that's the whole third party, the other kind of areas where there's- It didn't confront this problem. It didn't confront this problem, but- And Breath Horse was about uninsured or underinsured motorist coverage? Again, yes. It didn't direct this problem, but in both cases, they talk about and go back to the principles set forth by the Wisconsin Supreme Court in Anderson when it first reiterated the tort of bad faith. And they walked back the Coleman. I think they did, yes. I think they expressly said they did, right? Yes. And they specifically reiterated, so this is from Roll, quote, because the duty is rooted in the contract relationship, this court has refused to recognize a bad faith claim when a claimant was not in a contractual relationship with an insurance company. And how do they deal? So do they just miss, leak? Again, a leak had been overturned. They didn't say, we did this in leak, but they reaffirmed- The other part of leak had been overturned, yes. But they also didn't recognize and didn't quote favorably from leak either. Again, they specifically said, we have not recognized this. And again, then in Breath Horse, while not deciding the same issue that here, the court once again said, quote, significantly a bad faith claim arises from the contractual relationship between the parties. So those are both- So can I ask you, Ms. Grant, in your view, does a claims administrator owe any legal duty at all to beneficiaries in this set of relationships? So if you're getting at- In here, I would say under Wisconsin law, there is no fiduciary duty. There's no- Like courts under Wisconsin law, the fiduciary duty is between the insurer. Is there any duty at all, as you understand Wisconsin law? I would say, I guess, I'm not sure exactly. I guess I'm not sure exactly if there would be any duty. For example, courts have, let's say there's some separate duty, right? Some of these cases talk about an agent making a misrepresentation, right? If the duty arises from some separate action by the claim administrator. But here- So a duty perhaps not to misrepresent. I think there's two different distinctions, and the courts talk about this. And a little bit in this court's decision in the Lotholtz case, I think, helped spell this out. Which one? The Lotholtz case. Which was decided under Indiana law, but Wisconsin has the same law that was discussed there. And there's distinction between acts that would be tortious despite the contractual relationship, potentially some duty outside of the contractual relationship, versus acts that are tortious because of the contractual relationship. And that's where I think this falls under, and the tort of bad faith falls under, the second category. So there's no personal liability for those torts because they arise because of the contractual relationship. This set up the- I'm sorry. If I could follow up just briefly. But in the ordinary course, I take it your answer is no other legal duties to beneficiaries other than not to commit independent torts. Correct. And what about the school district? Does it owe, under Wisconsin law, fiduciary duties and duties of good faith to its employees? Yes, because under Wisconsin law, you would say so the contract party is between the beneficiaries and the school district, and there's a duty of good faith and fair dealing between those two parties, as well as, as pointed out earlier, the school district or the plan, the plan administrator, is the one with the fiduciary duties under the plan. So the setup here is not uncommon. In fact, the setup is very common. Correct. Self-funded plan, claims administrator. The difference here is just after, in the amended complaint, the school district wasn't sued. Correct. And I know, obviously, most of these cases fall under ERISA, and this one doesn't. But the setup is very similar to under ERISA, and this court has held in its Larson decision that if it's a self-funded plan, the sort of proper party for a claim for benefits is the plan, and that's kind of a similar situation here. There is a claim against the plan. If you believe you're entitled to plan benefits, you can bring that claim against the plan. They could have done so. They could have even done that after they figured out that, you know, they're mistaken, that this was not an insurance policy. They're essentially trying to put this sort of square peg of a bad faith claim in a round hole, trying to make a claim against United when their claim is for a claim for benefits, which is typical, usually falls under ERISA. But we have non-ERISA claim for benefits as well, and it's against the plan. Can the Johnson law allow punitive damages against a governmental entity like the school district? I don't know that. Okay. And the fiduciary duty claim that would exist would be akin to 1132A1B ERISA claim? Yes, if you can bring a separate fiduciary duty claim outside of ERISA. But outside of ERISA, you can bring tort claims as well, right? You can bring the bad faith claim, right? Correct, against the, but I agree. I mean, I think all the bad faith claims surround, obviously, we have this separate workers' compensation, but the other claims, if you really look at the courts that go through the discussion of Anderson, really go through the reason for that bad faith claim is because it's rooted in the duty of good faith and fair dealing between the parties, right? And that's between the beneficiaries, the Daniels, and the school district, the two contracting parties. So, what do we do with the plan documents that impose exhaustion requirements and statutes of limitations on claims by beneficiaries against the claims administrator, UnitedHealthcare? What do we do about them, do you mean? Doesn't that seem to imply, at least, that your clients and the school district anticipated that both could be sued under the plan? I disagree with that. There is that limitation of action that says, you know, you have three years to bring a claim against the claim administrator of the plan. I don't believe that just because that language talks about the limitation of action means that there is a bad faith claim against UnitedHealthcare. And just for the exhaustion, right, they allow, under both ERISA as well as non-ERISA plans, generally provide for opportunities to appeal. It depends on the plan document sometimes. Sometimes those appeals only go to the claims administrator. Sometimes the self-funded plan itself reserves a second or third level appeal for it to decide. A couple of things, just wanted to address the agency theory. Here, we believe that that agency theory was waived. It was not raised before the district court. And besides not being raised or alleged, they specifically alleged the opposite. Even after United had pointed out that it was not the insurer, they again alleged that United was the insurer. So they did not raise anything with respect to the agency theory. And nor did they argue it in response on the motion dismissed before the district court. But second, putting the waiver argument aside, it still fails. I think the agency theory is grounded in leak. And that goes to the issue of leak being overruled. Plus, Wisconsin courts have held that Wisconsin law does not recognize bad faith claims against agents. A couple of examples are that Williams and Wilkinson that we cite in our brief. And again, that's because the bad faith claim is rooted in the fact that the contract between the two parties. So an outside agent or a claims adjuster is not responsible for the duty of bad faith. And then a couple of points. It wasn't raised, but just want to raise the prompt pay claim. In their brief, the Daniels asked for that to be sort of deferred, I believe. There is no reason to defer it. The prompt pay claim is clear that that statute only applies to insurers. And everybody has conceded that United is not the insurer. There's nothing to defer. There's no quote status of United that continues to need to be understood as part of discovery. So in all respects, we believe that the district court's decision should be affirmed. Thank you, Ms. Grant. Mr. Lauffenberg, rebuttal argument. Thank you. I just wanted to comment on a couple of things. I think Judge Brennan, you suggested that the court in Roehl, however you pronounce it, I wrote an amicus brief in that case, walked back from Coleman. It did not. It simply referenced Coleman as an example of the circumstances under which the court had found a duty of good faith and fair dealing to exist. And then, most importantly in the Roehl case, the court, and we referenced this in our brief, the court rejected a contention that there was only a certain limited number or categories of bad faith or circumstances under which a bad faith claim would be recognized. At paragraph 36 and 37 of Roehl, this is referenced at page 25 of our brief, our principal brief on appeal, it said, no Wisconsin case holds that the three types of bad faith claims previously recognized are the only situations in which a claim of insurance bad faith may be recognized. And then went on to say, a review of the history of the tort reveals an evolution of the tort of bad faith over the decades. In other words, we identify those circumstances under which we believe tort remedy is required to prevent unfairness in these special relationships. Now, we had a quarrel in the briefing about whether insurers are fiduciaries or not or whether it's a fiduciary duty. What the court has really said is that the insurance contract in the traditional sense, and the court was, you were right, Judge, that neither Roehl nor Bretthorst or the other cases cited by UnitedHealthcare address the issue we have here. They were just generally talking about the tort of bad faith and how it arose. So they don't stand for the proposition that there is no basis for this claim. They simply, what they do say is that there is required a special relationship. Most typically, that special relationship arises out of a commercial insurance policy. But that's not the only situation. As evidenced by Coleman. Now, the only reason Coleman is not good law anymore is because in response to Coleman, the Wisconsin legislature amended the statute and put in that statute a provision that bad faith claims in the administration of workers' comp claims, under that statute, were also part of the exclusive remedy, were precluded by the exclusive remedy provision of the statute. Interesting, as Laxon acknowledged that, the Supreme Court, as Laxon acknowledged that, but pointed out that the statute was amended even before the legislature created the Uninsured Employers Fund. And therefore, concluded that this exception of bad faith claims on the exclusive remedy provision did not apply to Gallagher and the Uninsured Employers Fund statutorily. And then went on to say, and I disagree with counsel here, that the issue of agency was in fact raised in the district court once we determined that it wasn't a direct insurer relationship. UnitedHealthcare pointed out its agency relationship. We relied on, as Laxon in our trial court brief, Judge Conley agreed with the UnitedHealthcare's argument that this was some kind of complicated decision relying on the unique relationships established by the workers' compensation statutes. It was not. It was a consistent decision applying the tort, the common law, bad faith law to that situation. I think you do, I mean you do have a good argument to respond to the waiver. Where we're lost is Wisconsin attorneys know Wisconsin's a direct action state. Not all states are direct action states. I think one of the difficulties here is that after there's this ability to amend the complaint, everyone knows that it's not an insurer. There's still not that amendment. The Daniels have made an election to pursue their claim against the party that made the bad decisions that resulted in the denial of these benefits and led to the damages incurred by them. Now, to bring this claim against the school district, what are they going to say? Why not have the school district administrator point fingers at each other? Well, they might. Or the school district say, hey, look, we delegated this responsibility to UnitedHealthcare. It's their responsibility clearly under the plan, and they're the bad actors. And whether or not they have some sort of claim back against the school district when all is said and done, we don't know because we haven't seen those contractual relationships. That's why discovery is important. Counsel has suggested there was no incentive. We don't know that. That's not a part of the record. Discovery would go into the issue of just what was the nature of the relationship between UnitedHealthcare and the school district, and how was UnitedHealthcare compensated? And what incentives might they have for denying claims of this type? Those are important questions which haven't been addressed because we're not at that stage of discovery stage. And then finally, I appreciate you pointed out, Judge Hamilton, about what the Supreme Court, U.S. Supreme Court, said about the judgment in Leek. That's a holding by the Wisconsin Supreme Court. If it's this court's goal to determine how our Wisconsin Supreme Court views this issue, there's no clearer statement than Leek on that point. And if there's still doubt, no case has overruled it. All the other cases have consistently followed the proposition that beneficiaries of employee-type benefit plans are entitled to be treated with good faith and fair dealing, and have imposed responsibility on parties which have been assigned or undertaken the responsibility of administering claims. And of course, last resort, this court has discretion, of course, to certify this issue to the Wisconsin Supreme Court if it's unclear. We don't think it is. We think L. Saxon stands as controlling authority on this question, especially in light of the previous decisions in McEvoy and in Coleman and in Leek, and not to mention the polling case, which was clearly a third-party administrator, which was a decision that was upheld by the Court of Appeals, and the administrator never even argued that they couldn't be accountable in bad faith. We've kept you up here for a long time, Mr. Lauffenberg, because we won't get the chance again. Venue. The venue in Dane County is a result of CT Court being there. Why not Waukesha, where they lived, or Milwaukee, where South Point? Wisconsin has pretty liberal venue statute, and venue was never challenged here because UnitedHealthcare elected to exercise its right of removal. But it's common in Wisconsin. In fact, there's a fairly recent decision from the Court of Appeals on the venue statute, which is an interesting reading. I don't remember the citation to it, but it just came out that reinforced the principle that it's the plaintiff's choice of venue, which controls unless there's a specific statute that says you have to file it in a particular jurisdiction, or unless the court, in its discretion, believes that the convenience of the parties or the witnesses require that venue be changed. Thank you very much, Mr. Lauffenberg. Thank you, Ms. Grant. The case will be taken under advisement. That will close the court's hearings for the day.